UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

| | |
|---|---|
| ASHLY RAMOS, | **FIRST AMENDED COMPLAINT** |
| | **22 cv 5866 (AKH)** |
| | **ECF Case** |
| Plaintiff, | |
| vs. | |
| The CITY OF NEW YORK, ARHENIS LOPEZESTEVEZ, PHILIP ROBINSON, JOSE FIGUEIREDO, TIMOTHY HOWELL, RAMON SALCEDO, in their individual and official capacities, | **JURY TRIAL DEMANDED** |
| Defendants. | |

-------------------------------------------------------------x

Plaintiff Ashly Ramos, by her attorney, Cyrus Joubin, complaining of the Defendants, respectfully alleges as follows:

## PRELIMINARY STATEMENT

1. This action arises from various civil rights violations against Ashly Ramos ("Plaintiff" or "Ramos") by New York City police officers. Plaintiff asserts constitutional claims pursuant to 42 U.S.C. § 1983 ("Section 1983") against the individual defendants for false arrest, violation of procedural and substantive due process, failure to intervene, and a *Monell* claim against the City of New York for the same constitutional violations. Additionally, Plaintiff asserts analogous claims under New York State and New York City Law against the individual defendants, and against the City of New York under the doctrine of *respondeat superior*. Plaintiff seeks

compensatory and punitive damages, costs, disbursements, and attorney's fees pursuant to applicable state and federal civil rights law.

## JURISDICTION

2.   This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 and the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343 (a)(3) and (a)(4), this being an action seeking redress for the violation of Plaintiff's constitutional and civil rights.

3.   Plaintiff further invokes this Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over any and all non-federal claims and causes of action which derive from the same nucleus of operative facts and are part of the same case or controversy which gives rise to the federally based claims and causes of action.

## VENUE

4.   Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b) because the acts complained of occurred in this district.

## JURY DEMAND

5.   Plaintiff respectfully demands a trial by jury on each and every one of her claims as pled herein, pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

6.   The individually named defendants, Police Officers Arhenis Lopezestevez, Philip Robinson, Jose Figueiredo, Timothy Howell, Ramon Salcedo, (collectively, the

"individual defendants"), are and were at all times relevant herein officers, employees and agents of the New York City Police Department ("NYPD").

7. On the date of the incident giving rise to this complaint, the individual defendants were assigned to the NYPD 33rd Precinct.

8. Each individual defendant is sued in his individual and official capacity. At all times mentioned herein, each individual defendant acted under the color of state law, in the capacity of an officer, employee, and agent of defendant City of New York ("Defendant City").

9. Defendant City is a municipality created and authorized under the laws of New York State. It is authorized by law to maintain, direct, and to supervise the NYPD, which acts as its law enforcement agent and for which it is ultimately responsible.

## NOTICE OF CLAIM

10. Plaintiff served a Notice of Claim on the Comptroller of the City of New York within ninety days of the incident. At least 30 days have elapsed since the service of the Notice of Claim, and adjustment and payment has been neglected or refused.

11. This action has been commenced within one year and ninety days after the occurrence of the event upon which the claims are based.

## STATEMENT OF FACTS

12. In the early morning hours of June 18, 2021, Ramos and her boyfriend Justin Viloria were together in their rented room in 548 West 164 Street in Manhattan, Apartment 1G (the "Apartment").

13. Ramos was pregnant and dressed in her sleeping clothes – just underwear / night shorts and a tank top shirt.

14. Ramos and Viloria were renting their room from Ruth Hedian ("Hedian"), who in the preceding months demanded that they leave the room, harassed and menaced them, and took them to Housing Court in order to achieve that effect.

15. At one point prior to June 18, 2021, after an unlawful eviction attempt, police officers came to the Apartment and instructed Ms. Hedian that her tenants Ramos and Viloria had rights, and that it was illegal to force them out.

16. After Hedian initiated a housing court proceeding, Ramos and Viloria agreed to move out of the Apartment by September 2021.

17. That was not soon enough for Hedian, and since Hedian could not lawfully get Ramos and Viloria out of her apartment as quickly as she wished, she resorted to violence.

18. Around 1:00 a.m. on June 18, 2021, Hedian sent her two sons to attack Ramos and Viloria.

19. Hedian's two sons – one of whom wielded a long kitchen knife – busted into Ramos and Viloria's room, slashed Viloria's hand with the knife, and smashed a glass bottle on his head.

20. Hedian followed her sons into the room.

21. As the sons continued to attack, Ramos tried to record the attack on her phone, but one of the sons (and / or Hedian) grabbed her phone, and that son also took Viloria's phone and ran out of the Apartment with the two phones.

22. Meanwhile, Viloria was able to twist away from the son with the kitchen knife and ran out of the room and Apartment with Ramos.

23. Hedian and the son with the kitchen knife – his name is Oliver Hedian Rodas ("Oliver") – remained in the Apartment.

24. Ramos went to a neighbor and called the police.

25. Viloria went outside to catch his breath.

26. Other neighbors were outside and had seen the son with the phones leaving the scene.

27. When NYPD officers, including PO Lopezestevez, PO Robinson, and Lt. Figueiredo arrived, they saw Viloria's bleeding, lacerated hand and head, and his overall beaten condition.

28. Viloria, who had glass in his scalp, explained how he had been attacked and slashed in the Apartment.

29. Viloria also explained that one of his attackers ran away with his and Ramos' phones.

30. In the hallway outside the Apartment, the defendant officers saw Ramos, who identified herself as the 911 caller who reported the assault.

31. When the defendant officers knocked on the Apartment door, there was no response.

32. Ramos indicated that Hedian and Oliver were probably getting rid of the kitchen knife they had cut Viloria with.

33. When Hedian finally opened the Apartment door, the defendant officers observed absolutely no injuries or marks on her or on Oliver.

34. Hedian and Oliver conveniently and incredibly claimed that Ramos and Viloria violently attacked them. Their stories were obviously bogus, inconsistent, and

clearly rooted in their desire to get out of trouble and in their animus toward Ramos and Viloria.

35. There were absolutely no injuries, marks, or any other corroborating signs of Hedian and Oliver's false story – and it was obvious that Hedian and Oliver fabricated their bogus story to cover up their own illegal, violent conduct.

36. Both Hedian and Oliver refused medical attention.

37. Viloria, by contrast, needed to be hospitalized to get stitches, clean up his bleeding, and treat his excruciating pain

38. Based purely on Hedian and Oliver's obviously false story – and without asking basic questions, without exercising critical scrutiny, without speaking to neighbors, without looking at security videos, without trying to track down the escaped son, without investigating the scene of the attack, without conducting anything that could be described as a reasonable investigation – the defendant officers decided to arrest Ramos and Viloria for assaulting Hedian and Oliver.

39. Various neighbors were present at the scene and had relevant information (about, among other things, Hedian's escaped son and relevant background information regarding Hedian's hatred toward Plaintiff and motivation to lie) – but the defendant officers made no effort to speak with those neighbors.

40. Although the officers knew Ramos and Viloria were innocent victims, they arrested them in accordance with the NYPD's widespread custom and practice of arresting innocent civilians without adequate investigations simply because other civilians level criminal accusations against them – as if a mere accusation amounted to probable cause.

41. Indeed, the defendant officers admitted as much when Ramos and Viloria, insisting they had been attacked in their own room and shouldn't be arrested, were told in response: "They said you assaulted them, so *we have to arrest you*."

42. The defendant officers arrested Hedian and Oliver as well, saying, "You're all making accusations against each other, so we're just gonna arrest everybody."

43. When the slashed, bleeding Viloria complained it wasn't right that his attackers could get him arrested by simply making a false accusation, PO Lopezestevez added, "Our job is to arrest you and let the courts figure it out," rationalizing the defendant officers' failure to reasonably investigate criminal accusations before making arrests.

44. Ramos was transported from her building to the NYPD 33rd Precinct.

45. Indicating that she was pregnant and cold, Ramos pleaded for clothing from her room – but the defendant officers didn't give her an opportunity to get properly dressed.

46. By contrast, the defendant officers let Hedian change into a comfortable outfit.

47. When Ramos arrived at the precinct, her needs continued to be ignored.

48. Cold, shivering, and increasingly sick, Ramos repeatedly stated that she was pregnant and freezing and needed clothes and medical attention.

49. None of the defendant officers processing her arrest, including PO Lopezestevez and the other individual defendants, heeded any of her requests, leaving Ramos to shiver, cry, and vomit helplessly in her jail cell.

50. Ramos felt dizzy and repeatedly begged to go to a hospital.

51. Her pleas were ignored.

52. Ramos asked to call her parents, but the defendant officers didn't even allow her to make a phone call.

53. It was not until Viloria returned to the precinct hours later (after getting stitches and other treatment at the hospital) that Ramos got more clothing because Viloria gave her a shirt.

54. Ramos was eventually transported from the precinct to Central Booking in Lower Manhattan where she remained detained in holding cells.

55. Ramos was detained in Manhattan Central Booking holding cells awaiting arraignment in Criminal Court (100 Centre Street) for Assault in the Second Degree (a class D felony) – which was the charge in the Arrest Report ("Aslt 2: Serious Injury" [Defendants' disclosures DEF 002]) even though, as shown on body camera video, Hedian had no injury, let alone a "serious" one.

56. Approximately twenty-one hours after her arrest, Ramos was released because the New York County District Attorney's Office declined to bring charges against her.

57. In that twenty-one hour period, Ramos had only an orange to eat.

58. Plaintiff should have been released from the 33rd Precinct with a Desk Appearance Ticket ("DAT") because as of January 1, 2020, due to New York's Bail Elimination Act of 2019 – specifically the amendment of N.Y. Criminal Procedure Law Section 150.20) ("CPL 150.20") – NYPD officers were required to issue an "appearance ticket" (i.e., a DAT) to almost all people arrested for misdemeanor offenses, unless certain exceptions apply, as delineated in CPL 150.20(1)(b)(i-viii) ("An officer is not required to issue an appearance ticket if [] (i) the person has one or more

8

outstanding…warrants; (ii) the person has failed to appear in court proceedings in the last two years….").  In amending CPL 150.20, the New York legislature replaced the word "may" with "shall," creating a mandatory DAT rule.

59. By its express terms, the Bail Elimination Act of 2019 had the following "Purpose":  "To end the use of monetary bail, reduce unnecessary pretrial incarceration and improve equity and fairness in the criminal justice system."  *See* Bill Number S2101A, available at:  www.nysenate.gov/legislation/bills/2019/s2101.

60. Plaintiff had a liberty interest in being released with a DAT.  She was eligible for a mandatory DAT under the terms of CPL 150.20.

61. In deciding not to issue Plaintiff a DAT, the defendant officers did not apply the express language of CPL 150.20.  Instead, they used the NYPD Desk Appearance Ticket Investigation sheet – a document known as "PD 360-091" [Rev 05-09] – which has its own criteria for denying DATs, criteria that do not align with the exceptions listed in CPL 150.20(1)(b).

62. The following checklist is taken from the DAT Investigation form that the defendant officers – namely, Ramon Salcedo (Sergeant) – filled out for Plaintiff (Bates Number DEF 027 in Defendants' disclosures).

| REASON DAT WAS DENIED | |
|---|---|
| ☐ OUTSTANDING WARRANT | ☐ DESIGNATED RESIDIVIST PROGRAM (attach copy of FINEST warrant check) |
| ☐ RESIDES OUT OF STATE | |
| ☐ UNABLE TO VERIFY ADDRESS | ☐ DESIGNATED OFFENSES AS PER PATROL GUIDE AND INTERIM ORDER |
| ☐ PHOTOGRAPHABLE OFFENSE | |
| ☐ FAMILY OFFENSE | ☐ VIOLATION OF ORDER OF PROTECTION OR OR IMMEDIATE NEED TO SECURE ONE |
| ☐ UNABLE TO VERIFY IDENTIFICATION | |
| ☐ ARREST FOR CRIMINAL SALE OF MARIHUANA 4th OR 5th DEGREE | ☐ HARASSMENT 1st, OR MENACING 2nd, STALKING OFFENSES |
| ☐ UNDER THE INFLUENCE OF DRUGS/MARIHUANA TO THE DEGREE THAT HE MAY ENDANGER HIMSELF OR OTHERS | ☐ CHILD ABUSE, NEGLECT, MALTREATMENT |
| | ☐ GRAFFITI OFFENSES |
| ☐ ASSAULT 3rd, ATTEMPTED ASSAULT 3rd, MENACING, AGGRAVATED HARASSMENT, RECKLESS ENDANGERMENT 2nd DEGREE WHEN COMMITTED AGAINST CITY/STATE ENFORCEMENT AGENT PERFORMING OFFICIAL DUTY | ☐ CRIMINAL TRESPASS 3rd (Commercial Presence) |
| | ☐ UNLAWFUL EVICTION |
| | ☐ RESISTING ARREST |
| | ☐ OBSTRUCTING GOVERNMENTAL ADMINISTRATION 2ND (Not Uncooperative Action) |
| ☐ ARREST FOR INTOX / IMPAIRED DRIVING— VTL sec 1192 sub 1,2,3,4 | ☐ INTERFERENCE WITH PROFESSIONAL SPORTING EVENT (A.C. 10-162) |

FOR "E" FELONIES ONLY—AS AUTHORIZED BY PATROL GUIDE

DEFENDANT WITH E FELONY ARREST CHARGES MUST HAVE A VERIFIED ADDRESS TO QUALIFY:

Item Verified   Source of Verification
Defendant Address   Phone Contact   Arresting Officer   ID Type ____

IN ADDITION, TWO OF THE FOLLOWING CRITERIA MUST BE VERIFIED (indicate):
LIVES AT CURRENT NYC ADDRESS FOR 18 MONTHS OR LONGER
☐ NO  ☐ YES   ☐ Phone Contact   ☐ Arresting Officer   ☐ ID Type ____
EMPLOYED, IN SCHOOL, IN JOB TRAINING PROGRAM, OR ANY COMBINATION, FULL TIME
☐ NO  ☐ YES   ☐ Phone Contact   ☐ Arresting Officer   ☐ ID Type ____
HOME TELEPHONE NUMBER
☐ NO  ☐ YES   ☐ Phone Contact   ☐ Arresting Officer   ☐ ID Type ____

DESK OFFICER
RANK          NAME                    COMMAND          SIGNATURE
LT ~~SGT~~    ~~FIGUEREDO~~ Salcedo   033              Sgt [signature]

ARRAIGNMENT DATE INFORMATION (CJA use only)
Original Arraignment Date      Changed To (First)           Changed To (Last)

63. The NYPD has been exclusively, and as a matter of policy (as articulated in the NYPD Patrol Guide), using its own DAT Investigation form for over ten years. The NYPD has not modified its DAT issuance/denial criteria notwithstanding the clear and mandatory statutory language in CPL 150.20. Accordingly, to this day, NYPD officers continue to deny DATs for deserving arrestees because they follow their own criteria rather than following duly enacted law.

10

64. One reason Plaintiff would have been denied a DAT is that she was falsely charged with a felony – second degree assault, a class D felony, which entails causing serious physical injury. Even accepting the complainant Hedian's story at face value, the clear absence of physical injury on the complainant Hedian precludes serious consideration that this was felony-level assault entailing serious physical injury. Accordingly, to the extent the defendant officers' falsification of information – the falsification that Plaintiff's assault accusation had a felonious level of injury – caused Plaintiff to be detained at Central Booking rather than being released from the precinct with a DAT, then the officers are individually liable for denial of the right to a fair trial.

**DELIBERATE ACTS UNDER COLOR OF STATE LAW**

65. All of the aforementioned acts of the individual defendants, their agents, servants and employees, were carried out under the color of state law in the course and scope of their duties.

66. All of the aforementioned acts deprived Plaintiff of the rights guaranteed to citizens of the United States by the Fourth, Fifth, and Fourteenth Amendments of the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

67. The individual defendants acted willfully, knowingly, and with the specific intent to deprive Plaintiff of her constitutional rights secured by 42 U.S.C. § 1983, and by the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution.

**FAILURE TO TRAIN AND SUPERVISE**

68. Upon information and belief, the individual defendants' aforementioned abuse of power was not an isolated event. There were other instances of misconduct by the individual defendants that Defendant City knew or should have known about.

69. The NYPD failed to supervise and discipline the individual defendants despite their histories of malicious and mendacious behavior, ignoring the risk that they would engage in future misconduct, thereby encouraging them to continue to abuse their powers and violate the rights of civilians.

**THE NYPD'S DAT INVESTIGATION FORM**

70. The NYPD's DAT Investigation form bases DAT issuance/denial decisions on factors completely unrelated to – indeed, in conflict with – the duly enacted statutory language of CPL 150.20. Because CPL 150.20 creates a liberty interest in being issued a DAT, the NYPD's still-exclusively-used DAT Investigation form improperly deprives individuals of DATs who would be entitled to DATs under the criteria clearly laid out in the Criminal procedure law.

**DAMAGES**

71. As a direct and proximate cause of the said acts of the Defendants, Plaintiff suffered the following injuries and damages:

   a. Violation of her constitutional rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution;

   b. Severe emotional trauma, distress, degradation, and suffering.

### SECTION 1983 CLAIMS

### FIRST CLAIM

**False Arrest Under Section 1983**

72. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

73. By the actions described above, Defendants deprived Plaintiff of her Fourth Amendment right to be secure in her person against unreasonable searches and seizures, specifically her right to be free from false arrest.

74. As detailed above, the individual defendants intentionally arrested and detained Plaintiff without probable cause, without a warrant, without privilege or consent.

75. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

**SECOND CLAIM**

**Substantive Due Process Under Section 1983**

76. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

77. By the actions described above, Defendants deprived Plaintiff of her Fifth and Fourteenth Amendment rights to substantive due process.

78. As detailed above, the individual defendants intentionally subjected the pregnant Plaintiff to conduct so egregious and outrageous that it may fairly be said to shock the contemporary conscience.

79. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

**THIRD CLAIM**

**Procedural Due Process Under Section 1983**

80. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

81. By the actions described, the Defendants deprived Plaintiff of her Fourteenth Amendment right to due process of law.

82. Rather than release Plaintiff with a DAT – as required by New York State law – the individual defendants, exercising arbitrary discretion rather than following a process, prolonged Plaintiff's detention by keeping her detained and transferring her to Central Booking to await arraignment.

83. As a direct and proximate result of the aforementioned conduct of the individual defendants, Plaintiff sustained the damages and injuries hereinbefore alleged.

## FOURTH CLAIM

### Denial of the Right to a Fair Trial Under Section 1983

84. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

85. By the actions described, the Defendants deprived Plaintiff of her Fourth, Fifth, and Fourteenth Amendment rights to a fair trial.

86. The individual defendants deliberately forwarded fabricated information – specifically, false information that Plaintiff was being arrested for a felony-level assault involving serious physical injury – to the New York County District Attorney's Office.

87. As a direct and proximate result of the aforementioned conduct of the individual defendants, Plaintiff sustained the damages and injuries hereinbefore alleged.

## FIFTH CLAIM

### Failure to Intervene Under Section 1983

88.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

89.     Each and every individual defendant had an affirmative duty to intervene on Plaintiff's behalf to prevent the violation of her constitutional rights by other law enforcement officers.

90.     The individual defendants failed to intervene on Plaintiff's behalf to prevent, end, or truthfully report the violations of her constitutional rights despite knowing about such violations and having had a realistic opportunity to do so.

91.     As a direct and proximate result of the aforementioned conduct of the individual defendants, Plaintiff sustained the damages and injuries hereinbefore alleged.

## SIXTH CLAIM

### Municipal Liability Under Section 1983

92.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

93.     By the actions described, the Defendant City deprived Plaintiff of her Constitutional rights through its failure to train, supervise, and discipline malicious officers; through the NYPD's custom and policy of making arrests based purely on civilian accusations without adequate investigations; and through the NYPD's use of a

DAT Investigation form that conflicts with CPL 150.20 and deprives people of their liberty interest in a DAT without due process.

94. As a direct and proximate result of the acts of Defendant City, Plaintiff sustained the damages and injuries hereinbefore alleged.

## PENDENT STATE CLAIMS

## FIRST CLAIM

### False Imprisonment under N.Y. State Law

95. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

96. The individual defendants intentionally arrested and detained Plaintiff without probable cause, without a warrant, and without privilege or consent.

97. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

## SECOND CLAIM

### Battery Under N.Y. State Law

98. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

99. As detailed above, the individual defendants intentionally subjected Plaintiff to offensive and harmful contact.

100. As a direct and proximate result, Plaintiff sustained the damages and injuries hereinbefore alleged.

## THIRD CLAIM

### Right of Security Against Unreasonable Search and Seizure and Excessive Force Under New York City Administrative Code

101. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

102. As detailed above, the individual defendants intentionally violated Plaintiff's right to be secure against unreasonable searches and seizures, and against excessive force, in violation of New York City Administrative Code Title 8, Chapter 8: The Right of Security Against Unreasonable Search and Seizure and Against Excessive Force Regardless of Whether Such Force Is Used In Connection with a Search or Seizure. § 8-803 Civil action for deprivation of rights.

103. As a direct and proximate result, Plaintiff sustained the damages and injuries hereinbefore alleged.

## FOURTH CLAIM

**Negligent Hiring/Training/Retention of Employment Services Under N.Y. State Law**
**(Against Defendant City of New York)**

104. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

105. Defendant City owed a duty of care to Plaintiff to prevent the violations and abuse sustained by Plaintiff.

106. Upon information and belief, all of the individual defendants were unfit and incompetent for their positions.

107. Defendant City knew or should have known through the exercise of reasonable diligence that the individual defendants could potentially cause harm.

108. Defendant City's negligence in hiring, screening, training, disciplining and retaining the individual defendants proximately caused Plaintiff's injuries.

109. As a result of its negligent conduct, Defendant City has directly and proximately caused the damages and injuries hereinbefore alleged.

## FIFTH CLAIM

### Respondeat Superior Under N.Y. State Law

110. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

111. Defendant City is the employer of the individual defendants.

112. Under the doctrine of *respondeat superior*, the Defendant City is responsible for the wrongdoing of its employees acting within the scope of their employment.

113. As a direct and proximate result of the acts of the individual defendants detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands the following relief jointly and severally against the Defendants:

    a. An order awarding compensatory damages for Plaintiff Ashly Ramos in an amount to be determined at trial;

    b. An order awarding punitive damages in an amount to be determined at trial;

    c. An order enjoining and directing Defendant City of New York to establish DAT-issuance criteria for NYPD officers that adhere to the criteria set forth in CPL 150.20;

      d.      A court order, pursuant to 42 U.S.C. § 1988, that Plaintiff is entitled to reasonable attorney's fees, costs and disbursements; and

      e.      Such other and further relief as this Court may deem appropriate.

DATED:    February 10, 2023               /s/
                  New York, New York      CYRUS JOUBIN, ESQ.
                                                      43 West 43rd Street, Suite 119
                                                      New York, NY 10036
                                                      (703) 851-2467
                                                      joubinlaw@gmail.com
                                                      Attorney for Ashly Ramos